Garrett Freightlines, Inc. v. Commissioner.
Garrett Freightlines, Inc. v. Commissioner
Docket No. 33845.
United States Tax Court
1953 Tax Ct. Memo LEXIS 316; 12 T.C.M. (CCH) 350; T.C.M. (RIA) 53107; March 31, 1953
*316 Maurice H. Greene, Esq., for the petitioner. Robert G. Harless, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies in income tax against petitioner as follows: Year
Deficiency
1947
$4,497.08
1948
9,542.14
1949
5,452.24 Petitioner originally claimed an overassessment for the year 1947 in the amount of $955.16. That claim has apparently been abandoned, petitioner having conceded all of respondent's adjustments except one and paid the additional tax involved. The sole issue for our determination is whether certain payments made during each of the taxable years 1947, 1948, and 1949 on 8 per cent "debentures" constitute interest on indebtedness under Internal Revenue Code, section 23(b), or dividends on capital stock. Some of the facts were stipulated. Findings of Fact The stipulated facts are hereby found. Petitioner, an Idaho corporation with its principal place of business at Pocatello, Idaho, is engaged in the business of a common carrier of property by motor truck in interestate commerce in six western states, and in intrastate commerce within *317 the State of Idaho. Petitioner filed its tax returns for the years involved with the collector for the district of Idaho. Since 1936, C. A. Garrett and O. W. Garrett have been president and vice-president, respectively, of petitioner and members of its board of directors. Harry C. Hurlbert was secretary-treasurer and a member of petitioner's board until June 1937 when he was succeeded by J. F. Bryson, who in turn was succeeded by N. V. Stedtfeld on July 1, 1939. Other members of petitioner's board of directors were Wain Garrett, C. J. Sahlberg, W. J. Treadway, and R. L. Fillmore. Treadway and Fillmore were succeeded by Adrian Curtis and S. O. Porter in 1946, and in 1947 Ray A. Hendricks succeeded Porter. C. A. Garrett and O. W. Garrett are brothers and are 62 and 63 years old, respectively. Wain Garrett is their half-brother. Edith Williams, a stockholder in petitioner until 1945, was a sister-in-law of C. A. Garrett. None of the remaining common or preferred stockholders or debenture holders are related to the Garretts or to each other. From 1940 to 1944, inclusive, there were 670 shares of petitioner's common stock outstanding divided among 13 stockholders. At the end of 1945 *318 there were 713 shares of common outstanding, divided among 27 stockholders. During the entire period 1940-1945, inclusive, C. A. Garrett owned 246 1/2 shares, O. W. Garrett 243 1/2 shares, Wain Garrett 39 shares, and C. J. Sahlberg 35 shares. Until 1945 Edith Williams and W. J. Treadway owned 23 shares. In 1940 there were 500 shares of preferred stock outstanding, owned by eight individuals. C. A. Garrett owned 190 shares, O. W. Garrett 160 shares, Wain Garrett 45 shares, C. J. Sahlberg 38 shares, W. J. Treadway 30 shares, and R. L. Fillmore 20 shares. There were 1,334 shares of preferred stock outstanding as of January 1, 1943, owned by 14 individuals. C. A. Garrett owned 492, O. W. Garrett 460, Wain Garrett 96, C. J. Sahlberg 84, W. J. Treadway 60, and R. L. Fillmore 50. All of these shares were retired in 1943. All of the common and preferred stock had a par value $100of a share until 1949. During the years 1930 to 1936, inclusive, petitioner borrowed various sums from C. A. Garrett, C. A. Garrett's wife, O. W. Garrett, Wain Garrett, Hurlbert, and Sahlberg. By November 30, 1936, all of the indebtedness represented by notes previously issued to these persons had been paid. *319 On November 14, 1936, the board of directors voted a dividend on common stock of the company of record as of December 1, 1936, of $80 a share, the dividend to be evidenced by notes due one year after date with interest at 1 1/2 per cent. On December 2, 1936, the notes were issued in the aggregate amount of $52,000 with C.A. and O. W. Garrett each receiving notes of a face value of $18,480. Between December 2, 1936, and December 29, 1937, the $52,000 in notes was liquidated by payments in cash of $12,398.49, a transfer of real estate valued at $8,000, an assignment of a contract receivable in the sum of $2,200, and by an exchange of notes for 6 per cent cumulative preferred stock in the sum of $29,401.51. This exchange took place on July 14, 1937, a total of $43,100 in preferred stock being issued about that date. The balance of the preferred stock then issued represented $1,736.50 in accrued 1935 salaries, $5,696.40 in 1935 bonuses, $360.75 of interest, and a $4,800 payment on a real estate mortgage. The corporation also received two notes amounting to $1,159.60 and $96.60. Only the mortgage holder who exchanged his mortgage for preferred stock was not a common stockholder or employee *320 of petitioner. On December 28, 1937, the board of directors authorized a dividend on common stock in an amount equal to the par value thereof. This dividend was paid by the corporation issuing notes in the sum of $65,500 on December 31, 1937, due on demand with interest at 6 per cent per annum. During the year 1938 petitioner issued $6,200 in preferred stock to certain of its officers in payment of a balance due on 1937 salary bonuses. During the same year, petitioner paid $7,000 in cash on account of its previously issued notes then outstanding. On September 8, 1939, petitioner sold $700 worth of preferred stock to one R. F. Rugdale for cash. This was the only preferred stock ever sold by petitioner for cash. During 1939 petitioner also paid $450 to retire what was originally a $500 note, and paid two other notes representing $13,000 which petitioner had borrowed in cash from C. A. Garrett and Hurlbert in 1937. In 1940, there was no change in the amount of notes payable or preferred stock outstanding. At that time the aggregate principal amount of notes payable was $58,050, and the total par value of preferred stock outstanding was $50,000. On January 18, 1941, the board *321 of directors authorized an exchange of preferred stock for the notes payable of petitioner outstanding, in order "to improve the appearance of the corporation's financial statement and thereby to improve its credit * * *." $58,400 in preferred stock was subsequently issued to retire the $58,050 in notes then outstanding, with the additional $350 being charged to accounts receivable to balance certificates of stock issued in $100 units. At the same meeting $25,000 in preferred stock was authorized and was subsequently issued, to pay a salary bonus to employees. All of the preferred stock was 6 per cent cumulative, dividends being payable when and as declared out of petitioner's net profits before any dividends on common stock could be paid or set aside. Petitioner could redeem the whole or any part of the preferred at $102 per share plus all accrued accumulated and unpaid dividends. In event of liquidation or dissolution, preferred stockholders were entitled to $100 per share plus unpaid cumulative dividends before any distribution could be made to holders of common stock. Preferred stockholders were not entitled to vote unless petitioner failed to pay their dividends for two semi-annual *322 periods, consecutive or otherwise, in which event they were entitled to vote in the same manner as common stockholders until all their dividends in arrears had been paid. At the time of the original issue of preferred, the common stockholders were entitled to subscribe to the preferred stock at the rate of two-thirds of their then record holdings. The remaining preferred stock could then be offered for sale at such times as the directors might direct. No preferred stock could be transferred except upon written approval of the directors. On December 6, 1941, the board of directors authorized payment of previously approved salary increases for certain officers and employees in the aggregate amount of $45,144.61, to be paid $9,894.61 in cash and $35,250 in 10-year debenture notes. The debentures had a maturity date of 10 years from date of issue, bore interest at two to six per cent per annum to be fixed by the board of directors, and were callable prior to maturity without penalty. They recited: "This instrument is inferior in right to claims of other classes of creditors, and, unless otherwise provided for, other creditors shall be preferred as against the holders of this debenture. *323 " The debentures were issued under date of December 25, 1942, to 13 persons and were entered on the books as "Employee Debentures." On January 30, 1943, the board of directors took the following action: The President summarized the action of the Stockholders in their meeting just adjourned in approving the exchange of all outstanding preferred stock for a new type 25-year deferred debenture, which would mature January 1, 1968, carrying an interest rate of 8% per annum payable semi-annually, and suggested that the Board of Directors follow through in approving the plan and the form of the debenture as outlined in the Stockholders' Meeting, that the net result of such a plan would be the retirement of all outstanding preferred stock as of the first day of January, 1943, and the issuance in lieu thereof debenture certificates, the form of which is set forth below: "GARRETT FREIGHTLINES, INC., for value received, acknowledges itself indebted and promises to pay to… on or before the… day of , 19 , the sum of… Dollars, with interest at the rate of… per cent per annum, payable semiannually on the first day of January and July of each year, both principal and interest payable *324 at the main office of the corporation in Pocatello, Idaho. "This is one of a series of debentures issued from time to time of like tenor and of which the aggregate amount shall not exceed Two Hundred Thousand Dollars. This debenture and others of said series are deferred and subordinated both as to principal and interest, to the claims of all other creditors of the corporation, including present and future creditors. The corporation may, at its option, suspend or defer the payment of interest; but such suspension or deferment in the payment of said interest shall in no manner relieve it of the obligation to pay the interest herein provided at the maturity date of this instrument. It is expressly understood and agreed that the corporation shall pay no dividend on its stock unless all interest on its deferred debentures has been paid in full. It is understood that the maturity date of these debentures may be extended with the written consent of the holders of two-thirds thereof, providing such extension is approved by the corporation. "It is further provided that in the event of dissolution or liquidation of Garrett Freightlines, Inc., all creditors of the corporation shall be first *325 paid in full before any part of the assets be applied to the payment of this series of debentures, but all holders of debentures shall rank equally with each other. "This debenture shall be registered on the books of the corporation and such registry noted hereon, and shall be transferable only on order of the registered holder. All payments of principal or interest shall be made to the person in whose name it is so registered. At the request of the holder, and upon payment of any stamp taxes payable on such reissue, this debenture, alone or with others of this series, may be surrendered and new debentures issued in place thereof, of such denominations as the holder may designate, equal in the aggregate to such amount surrendered. "IN WITNESS WHEREOF, Garrett Freightlines, Inc., has caused these presents to be signed and its corporate seal affixed this… day of , 19 . "GARRETT FREIGHTLINES, INC. "ATTEST… Secretary President" Considerable discussion took place and the plan was adopted on the motion of O. W. Garrett, seconded by Wain Garrett, and carried unanimously. The President then instructed the Secretary to obtain all outstanding certificates of preferred stock and issue *326 the new deferred debenture certificates as of the first day of January, 1943, in denominations as desired by the various holders thereof, and, further, that it will be satisfactory for shareholders to increase their holdings of deferred debentures or decrease their present holdings in exchange for cash if they so desire. Following this action, petitioner as of January 1, 1943, issued $167,350 in debentures, of which $125,500 retired $125,500 in preferred stock, $35,250 retired the issue of 1941 debentures, and $6,600 were sold for cash. The balance of the then outstanding preferred stock, $7,900 par value, was retired for cash. On September 6, 1943, the board of directors authorized a new issue of 8 per cent deferred debentures to be offered to various employees or petitioner in order to cultivate employee morale and confidence. As a result, debentures of a par value of $26,850 were sold for cash to employees of petitioner during October 1943. On December 31, 1943, a total of $194,200 in debentures was outstanding. During 1944, $2,500 in debentures were retired and $1,000 issued, all being cash transactions. During 1945, $13,350 were retired for cash. Since December 31, 1945, and *327 continuing to the date of the hearing, the amount of issued and outstanding debentures has been $179,350. The debentures have always been carried on the books of the corporation as "Notes Payable - Debentures." On May 9, 1946, through a merger of petitioner with Cotant Truck Lines, Inc., petitioner issued $14,000 of its preferred stock in exchange for $14,000 worth of the outstanding Cotant stock. This $14,000 in preferred stock has been the only preferred stock of petitioner outstanding since the exchange of preferred stock for debentures in 1943. Of the $179,350 in debentures outstanding during the tax years involved, the original indebtedness of petitioner, if the intervening issuance and exchange of preferred stock is ignored, was as follows: Obligation
Amount
Notes issued in payment of 1936 and
1937 common stock dividends
$ 82,931.70
Accrued salaries
23,138.60
Bonuses payable
10,572.60
1941 Debentures issued in payment
of retroactive salary increases
33,500.00
Note secured by real estate mort-
gage
4,800.00
Interest payable
341.01
Cash or cash items
24,066.09
Total
$179,350.00
Of the $125,500 in debentures issued in exchange for preferred *328 stock, $123,300 is still outstanding. Of this amount, $108,300 is held by the original holders. These persons are C. A. Garrett, O. W. Garrett, Wain Garrett, and C. J. Sahlberg. Only two of the present debenture holders are not employees of petitioner. Less than half the number of debenture holders are common stockholders but they hold a large majority in amount of debentures. The ratio of petitioner's borrowed capital to its invested capital as adjusted in accordance with various revenue agents' reports and a communication from the Interstate Commerce Commission is as follows: Borrowed
Adjusted Invested
Year
Capital
Capital
Ratio
1936
$128,390.00
$130,506.35
.98:1
1937
223,279.10
164,457.50
1.36:1
1938
157,200.00
259,493.48
.61:1
1939
149,550.00
312,646.92
.47:1
1940
184,950.00
353,111.68
.52:1
1941
220,695.00
473,094.30
.52:1
1942
80,750.00
635,066.29
.12:1
1943
354,200.00
605,546.58
.58:1
1944
463,700.05
561,171.61
.83:1
1945
629,977.05
579,392.50
1.09:1
1946
757,895.65
671,845.00
1.13:1
On September 2, 1948, a revenue agent submitted a report covering his examination of petitioner's income tax returns *329 for the years 1942, 1943, 1944, 1945, and 1946. This report divided the payments made on the 1943 debentures into two classes. Interest paid on the amount of debentures exchanged for preferred stock, aggregating $125,500, was disallowed. Interest on the amount of debentures sold for cash, exchanged for 1941 debentures, or issued in direct payment of officers accounts and notes payable was allowed as deductible. Petitioner did not protest this report. For the taxable years 1947, 1948, and 1949 here involved, respondent disallowed all of the deductions taken for payments made on the 1943 debentures. The amounts in question constituted interest paid on indebtedness of petitioner. Opinion On the sole contested issue we regard the disposition of this proceeding in petitioner's favor as required by Lansing Community Hotel Corp., 14 T.C. 183, affirmed (C.A. 6), 187 Fed. (2d) 487, in which respondent has now acquiesced, 1952-1 C.B. 3. The possible distinction that the due date of the debentures could be extended by a two-thirds vote of the debenture holders is of no significance. An obligation is not deprived of a fixed maturity date by provisions *330 for possible extension under such an arrangement. Commissioner v. O.P.P. Holding Corp. (C.A. 2), 76 Fed. (2d) 11; see Commissioner v. H. P. Hood & Sons (C.A. 1), 141 Fed. (2d) 467, 470. A recomputation will be necessary because of certain undisputed adjustments. Decision will be entered under Rule 50.